Good afternoon. Illinois Appellate Court First District Court is now in session. The Sixth Division, the Honorable Justice Michael B. Hyman presiding, case number 22-1031, People v. Robert Thompson. Good afternoon. I'm Justice Michael Hyman, and with me is Justice Carl Taylor. As you know, each side has 20 minutes, and the appellant can reserve some time for rebuttal. So when you introduce yourselves, and please, for Ms. Hernandez, tell us how much time you wish to reserve. Yes, good afternoon, counsel. May it please the court, my name is Manuela Hernandez, and I'm here on behalf of Mr. Robert Thompson, the appellant, and I'd like to reserve five minutes for rebuttal. Okay, thank you. So, Ms. Bynum, if you would just introduce yourself. Good afternoon, counsel, your honors. Assistant State's Attorney Whitney Bond on behalf of the people. Thank you. You may proceed. Thank you, your honor. Mr. Thompson was convicted under Section 24-1.6, which prohibits the possession of a firearm without a court card. However, due to Mr. Thompson's age at the time of the offense, there were several requirements that are unconstitutional for him to be able to obtain a FOID card. Well, how do we know they're unconstitutional? Yes, your honor. So if we apply the New York State Rifle and Pistol Association versus Bruin test to the requirements in the FOID card act to those individuals who are under 21, we will find that they are in fact unconstitutional. Was that done by the trial court? Was that information, that argument made at the trial court? No, your honor, it was not. So how could we on appeal rule on something that has not been brought before the trial court? Well, your honor, a constitutional challenge to a statute may be brought at any time, even on appeal. And this is a constitutional challenge to a statute that applied to the possession of a weapon without a FOID card. So this court may consider it. I understand that. But in Bruin, the court said very specifically that you need evidence. And evidence suggests having experts opine on the history at that time with regard to whatever this issue is on the Second Amendment. And there was no evidence in this record. So Bruin is a very unique case. I think everybody would agree. And it's only been around a year and it's caused a lot of commotion, put it that way, on both sides in a lot of case law. But so how do we then, I understand you can bring constitutional issues at any time, but what about the idea that, well, can you just cite any treatises you want and any law review articles and whatever, newspaper articles that say what happened back in the 18th century? Or do we need to have some kind of evidentiary record to make this argument on the Second Amendment under Bruin? Well, your honor, I don't believe that you need to make an evidentiary record at the trial court level. It is the state's burden to show that there are historical analogs and they have tried to do so through appeal. Moreover, I would like to point your honor to other cases that have been decided by this court where there has been no requirement for a historical record to be presented in order to address the question of constitutionality of either the Floyd card, the CCL. There's been several statutes that have been challenged and none of the courts have required that there be at the trial court level some sort of evidentiary hearing where experts can testify. I mean, the state is able to present, was able to present through the appeal on numerous ordinances. Before you go on, Ms. Hernandez, I just wanted to ask, can you clarify for us whether you're making a facial challenge or an as-applied challenge? Because you state in paragraph eight, on page eight of your brief, that you're making a facial challenge, but your argument appears to be an as-applied challenge. So just kind of walk us through that a little bit. Yes, your honor. And I will say that I did struggle with that as well. I am making a facial challenge. I'm making a facial challenge because it is based on the plain text of the Floyd card act and what it says about its application to those under 21. Right. But as soon as you start discussing that, the problem is that it affects those individuals under 21 and your client is one of those individuals under 21. It seems as though your argument, you're making an as-applied challenge to your client. You're not saying that the statute is unconstitutional and it's based as applied to everybody. You're saying as applied to your client. Right. But there is a very specific provision of the Floyd card act that applies specifically to those under 21. And I will add that when you have an as-applied challenge, you are really thinking about the specific characteristics of that particular individual. Here, I mean, the only characteristic really is the fact that he falls under this subset of individuals that are affected by this very specific provision of the Floyd card act. And when you make a facial constitutional challenges, you don't necessarily have to. You look at the the impact that the statute has on the group for which the statute creates a restriction. You don't necessarily have to look at the entire class of people. So it in this case, we have that he was under 21 and he falls within this very specific class of individuals that's affected by the plain text of the Floyd card act. And therefore, it is a facial challenge. I understand that it's a little tricky because we're talking about a class of individuals rather than everybody that applies for a Floyd card. Right. But let me ask you a your client was only 17 at the time of the offense, though, is that correct? I believe he was 19. At the time of the offense. OK, yes, he was 19 years old. So, Mr. Hernandez, just to follow up on Justice Walker's point, if we were to fight in your favor, does that mean that we strike down the entire statute or only the provision of the statute that imposes a restriction on those under the age of 21? Yes, so the Floyd car act does have a savings clause, which means that this court could strike down the provision that applies to those under 21 and still keep the constitutional provisions within the statute. So, yes, you could sever the portion that applies to those under 21 from the rest of the statute that has different requirements or, you know. And that's what you're asking. That's what you're asking the court to do. Yes, your honor. That's what I'm asking the court to do. So you're asking us to allow 11 year olds to get a gun. Is that correct? Because there will not be nothing to prohibit anybody under 21. Once that's out, a five year old can get a gun. There's nothing in there. And five years may have been carrying guns back in 1776. I don't know. But 11 year old, 12 year old, 15 year old, that that's the result that you're asking for. Is that correct? Or am I wrong? Well, your honor, I do believe that that is an easy legislative fix that could follow this court's decision. But I will note, however, that the provision from the Foyt Carte Act doesn't really say that it's between 18 and 20 or 18. You know, the provision from the Foyt Carte says anybody under 21. So there really isn't that 18 year old line that the Foyt Carte Act right now, as it stands, is providing actually, you know, a 16 year old, a 15 year old under the provisions that are in place now could get a Foyt Carte if their parent agreed or if they appealed, which I mean, I don't know if they would do that. But say they appealed if under the discretion of the sheriff or the court, the court would decide that it wouldn't be against public interest to do so. Maybe, maybe not. But but but so I am correct, though, because the same point of 15 year old could get a car. All a parent would have to do anywhere in this state to say, yeah, I want my 15 year old to be able to carry a gun. As it stands right now. Yeah. So I don't think that deciding that for law abiding adults, this particular restriction is unconstitutional, in fact, doesn't change that much from what we have now. And it could be. And I mean, if we decide that there's a different age, I don't know what the legislature thinks is the appropriate age for someone to actually be able to possess a gun, given the the FOIA Act is drafted. There could be a different provision that says for those under 18. So so you say that a person under 21 should be able to have the same rights as an adult to to get a FOIA card. Is that right? That an 18 year old? Yes. Under 21. Under 21, but over 18 is my argument. Okay. Let's take your argument. I'll just leave it with your argument, although that that's not the result. But let's use that argument. Can they under 21 to 18? Can they drink in Illinois? No. Can they gamble in Illinois? I'm not sure, but I think no. The answer is no. And so we do have laws. And one of the arguments that your office makes a lot, it has to do with the brains of people under 21. And then you're saying people under 21 have different mindsets and are developing adults. And yet you want these developing adults to make it easier, that's the result of this, to get guns because you're saying that's the, although Bruin doesn't say that specifically, you're saying that's the result. Well, I would say two things. First, with respect to the gambling and the drinking and all of that, those are not constitutional rights. You don't have a constitutional right to drink alcohol or to gamble. And so that does not concern your rights. And with respect to the second question, which is how come we can argue that someone under 21 has the same brain development as someone under 18 and at the same time say, well, they should be carrying guns. And my answer to that is given the case law as it is today, it's not as if a person who is under 21 and wants to be resentenced, and this is all based on the developments of Miller and all that case law, it's not as if they can just automatically get resentenced. They have to prove and they have to show through evidence that their own brain development is akin to that of a juvenile. So it's not as if just because you're 21, yay, you're young and your brain is not developed. You have to actually show that given your particular characteristics and the way that you grew up and all of the things that you faced in life have delayed your brain development. But isn't that what has to be done here? That's exactly what the act says. He or she must have written consent of the parents or legal guardian to possess and acquire firearms and that he or she has never been convicted of a misdemeanor other than a traffic offense or a judge delinquent. So there are standards here that you're showing that you have the mental capacity to do that. And you're saying, well, it's okay in the sentencing realm, but here, no. I'm not sure that I understand the comparison that you're making. If you're saying that, I think that, or that my argument is, you know, let's not. It's not you, it's your argument, I want to make that clear. That the argument that I'm making is that a person who is under 18 is necessarily someone that should be in possession of a gun. Obviously, the Foyt Part Act places restrictions, or not restrictions, but let's say requirements, not just to those under 21, which is what you were reading, but to adults over 21. So they have to show that they don't have a criminal record. They have to show that they weren't in a mental institution for X amount of years. You know, they have to make all these showings. So, I mean, that applies to both. The statute wants to know, I mean, they want the police to be able to know that this person is someone that's capable of handling a gun, and this is what, and this applies to everyone, not just to those under 21. Mr. Hernandez, if I could follow up to Justice Hyman's question, you know, he drew the comparison to drinking and gambling, that you can't do that unless you're 21. And your response was, well, this involves a constitutional right to Second Amendment. But in Bruin, the court, and even, you know, the cases before Bruin, the high court has said that the states may restrict firearm access to those who are law-abiding, right? And so, for example, felons can't possess guns, correct? So if the state says no, you agree with that, right? Well, I mean, I think that this is still something that's being challenged. I think that in Illinois, the appellate court has said that felons cannot, that it's okay to restrict their, the possession of guns for felons. But let me ask you about the other word they use. They use responsible, right? Law-abiding, and then they say responsible. So isn't that what we're talking about? You know, we don't let those under 21 consume alcohol as a matter of public policy because they're not responsible, right? Same with gambling. They're not responsible. So if responsibility is a standard, why can't the state restrict access to firearms to those under 21 to only those who have parental consent? Well, as reasonable as that may sound, Your Honor, the fact is that the Supreme Court in Bruin set out a very specific test for us to determine whether those types of restrictions can be applied today. And under this historical analysis, which is the second part of the Bruin test, there is no indication whatsoever that there was any limitation in the possession of guns or arms for those under 21, between the age of 21, at the time of the enactment of the Second Amendment. And this is where Bruin leaves us. It leaves us to look at the history to determine whether we can now impose these restrictions. And so if we look at what the state has provided as historical references, we can see that there firearm for those who are over 18 and under 21. And also, very specifically, it creates a May issue licensing scheme for those people who are already adults and have many responsibilities, etc. How does it create a May issue? So the way that we would distinguish the shall issue from the May issue is that we know that for other for adults over 21, if you have all of the requirements that you need your background check, your mental health, all of that, this there's no, the state has no power to deny you a license. We're talking about a May issue scheme, where here for 18 to 21 year olds who are adults, still have to get parental consent who the parent now has discretion to decide whether they will or they will not. And that's not even counting whether the parent is able to give consent. But even if they can, they can still deny consent to this individual. And then if individual appeals, there is discretion by the government to deny such a license. And so that is what it means when I say for those under 21, between 18 and 21, who are law abiding adults, there is a May issue licensing scheme, which was held unconstitutional in Bruin. Sorry, no, well, as you know, the state filed a motion for citing additional cases and I wanted to give you the opportunity to respond to the three cases that were cited were Brooks, Baker, and a case by name of gun GUNN. Do you have any response? Well, yes, Your Honor, I think that most of those cases, I find them helpful to my argument with respect to Brooks. It's important to note that Brooks doesn't really make it doesn't really take into consideration the very specific characteristics of the individual when determining whether the Second Amendment actually protects a particular individual. The court in Brooks said that this would be part of the second portion of the Bruin test. So contrary to what the state is arguing, that those between 18 and 21 or 20, 18 to 20 year olds are not part of the people who are protected by the Second Amendment. I think that the court in Brooks makes clear that in fact, they are versus gun. I will note that in people versus gun, the court actually did make the analysis of the Floyd Card Act and the CCL in a very similar situation as that we have here, which is an individual who was convicted of a crime because they didn't have this license. So I, you know, I think that it supports this court's ability to look into the Floyd Card Act and actually do the Bruin analysis and apply it to these particular circumstances. And the third case, you said is Baker? Yes. So I think Baker is obviously distinguishable in that it was a restrictions for convicted felons. And I think that that was a much more clear argument that the court really didn't go through the Bruin analysis, simply decided that under the holding in Bruin, it's clear that there can be restrictions imposed on convicted felons and that the Illinois statute was constitutional. So I don't think that any of those cases really undermine my argument. And in fact, they support not only this court's ability to review the challenge here, but also contradict the state's argument that my client is not protected by the second amendment. Are there any other questions? If not, if you could just summarize, and you still have five minutes. So if you just summarize now, we'll hear from the state. Ah, yes, your honor. So as I said, the test in Bruin is now the new legal framework. There's two questions. The first is my client protected by the second amendment, and he is, and is the conduct protected by the second amendment? And I would say that it is and also under Brooks, the court said possession is a protected activity under the statute. And second, the state has not been able to provide any historical analogs to the restrictions that we have today, therefore making the May issue licensing scheme here unconstitutional. And given that that provision of the statute is unconstitutional and the Foyt Card Act, which is what applied to my client at the time when the crime was committed, his conviction should also be reversed as unconstitutional. Well, it went just really quickly, though, the state does argue that traditionally, 21 year olds were considered to be minors, so that the nation's historical tradition would be in line with the statute. Do you want to respond to that? Oh, yes, your honor. So this is based on the common law, I guess that there was an understanding that those under 21 were minors. However, there's no specific example that we've seen that says that those under 21, or even minors, for that matter, could not possess weapons. And what we do have is that those over 18, so 18 and up, were able to possess arms. Now that brings us back around to the problem that Justice Hyman started with earlier, though, that this issue was never raised before the trial court. So we don't, of course, we don't have what you're suggesting we would need to understand that information better. Well, I would say that it is the state's burden to provide this information to the court. And the fact that we don't have, that this court may feel that there's not enough, I'd say that it's because the state has not fulfilled its burden in this case. No, but when is it, but they couldn't, at the time of the hearing, I think Bruin may have come out the next day. So, and the decision came out a week after Bruin. So Bruin was not a factor in this case at all. So you're saying, oh, well, let's blame the state, because they didn't bring in, they didn't meet the burden. But that was fresh off the press. And they, that wasn't the law at the time that the hearing was I'm sorry, I'm not saying they didn't meet their burden at the circuit court level. I'm saying they didn't meet. I know you're saying on appeal, but my point is, it should have happened before it gets here. Well, and Mr. Thompson didn't make a challenge for the same reason, right? So, you know, he didn't challenge the constitutionality because, you know, it didn't exist. But it exists now. And he has a conviction, a felony conviction that is unconstitutional. So I'm going to ask that this court reverse his conviction. Ms. Hernandez, one quick follow-up. My understanding in the post-Bruin era is that courts had been considering evidence, including the testimony of experts on this question of historical analogs. And so, you know, why should we decide this case without the benefit of that evidentiary record? Well, I think that there's, there has been a lot of litigation regarding this issue. There are many cases, well, I wouldn't say many, many, but you know, there's sufficient cases that are out there that provide all of this historical background regarding people between the ages of 18 and 21. Obviously, the statutes that were challenged were slightly different from what we have here. But I really, I mean, obviously this court can decide that it needs more, but there really has been sufficient litigation out there and information in all of these cases that this court could look at and I believe would be sufficient to determine this issue. Okay, thank you very much. Ms. Bond? May it please the court. Again, Assistant State's Attorney Whitney Bond on behalf of the people. As Justice Hyman pointed out earlier, Bruin kind of threw a lot of this legal landscape out of whack, so to speak. So, when I was kind of approaching this case, I was trying to think of how to break it down and I came up with kind of three separate ways to look at, you know, this post-Bruin landscape. First, Bruin expressly endorsed Illinois' licensing scheme because it's a shout issue jurisdiction. That was enough for this court to reject the defendant's facial challenge to the aggravated unlawful use of a weapon statute. As noted on our brief, Thompson had said that there didn't need to be this fulsome Second Amendment analysis when Bruin has already held that Illinois' CCL statute comports with the Second and Fourteenth Amendment. The Bruin court made it clear that there was nothing in their opinion that should be interpreted to suggest that shall issue licensing regimes such as this one are unconstitutional because applicants, they're not required to show an atypical need for self-defense like the genesis of the Bruin case in New York. Thus, they don't provide, they don't, our licensing shall issue licensing scheme doesn't prevent law-abiding and responsible citizens from exercising their Second Amendment right to bear arms. And this was already sort of borne out in this appellate court's decision in People vs. Gun. There, the defendant argued that the FOI card and CCL act were facially unconstitutional pursuant to Bruin because they were arguing the Second Amendment does not permit any kind of restriction on the right to bear arms. But this court rejected that argument and without conducting the two-part test outlined in Bruin, finding that Bruin indeed recognized the constitutionality of our FOI card and CCL acts. Thus, Gun supports the state. Ms. Bond, so in Gun the defendant was over 21? Yes. Okay, so I mean it didn't reach the very issue that we're asked to reach today, correct? No, it did not. And you know, I've this kind of different sort of wrinkle. And this is the first time I'd seen this issue of 18 to 20 year olds, you know, challenging, using Bruin to challenge the constitutionality of the FOI card statutes. Gun, that was just a defendant that had never, it was a, it was an over 21 defendant. So it is different in that regard, but we're really, I only really cited this as additional authority just to highlight that, you know, we, we don't have to go so far into our Bruin analysis to make a decision. Can you hear me okay? We're beginning to break up, but you're better. I started to speed up. I thought I hit a button randomly. So I apologize. What was the question? I don't recall. Yeah, let's, you know, the question is this, Ms. Bondo. There are, according to Mr. Hernandez, there are a class of people, those 21 or under 21, you know, it could go down to four or five or two, but those under 21 who may not possess a gun unless their parent consents, or if their parent is him or herself a, you know, been convicted of a crime, then they may not possess a gun at all. So Ms. Hernandez argues that, that, you know, it's, it's, it's the misfortune of having a particular parent, I suppose, and, and, and they should not lumped in with their parents. And so what's your response to that? I think it's an interesting point because we have, what we have here, and using it in the context of what's going on here, we had a defendant who is 19 years old and didn't, you know, check the proverbial boxes in terms of the background check, just simply did not apply. If there's a defendant that was, let's say like your suggestion was that maybe perhaps their parent isn't able to consent or their guardian isn't able to consent. So they check all the boxes up until that point, and then don't have the parental consent box checked. I think that would become an as-applied challenge to the constitutionality as opposed to just sort of this blanket facial challenge to the constitutionality where this defendant was certainly, I'm unclear, the record doesn't make clear whether or not this was get the job done in terms of, you know, handling what needed to be handled when it comes to applying for an Apple ID card or a CCL. And I think too, that the second kind of prong to that would be that in cases where there's defendants, in cases where there's defendants, did I break up again? Did I break up again? No, you're fine. You're fine. Okay. So in cases where there is, let's say a defendant has to have his parent or guardian help him fill out the application or consent to the application, that fact that we're putting that onto the parents further takes it away out of the sort of state actors that were what was happening in the Bruin world, where you could do all the things that you're supposed to be doing to require to obtain the Apple ID card or their concealed carry. And there was still a state actor that said, you know, like they could still deny that's the main issue portion of this. So I think when you've got a defendant like this one who we don't know if tried to apply or just didn't, that's very different than say to your hypothetical. And I believe that that will go down as applied constitutional challenge instead of just the facial one that we have here. And then the second piece of that, and the kind of the second piece of this case, as I was thinking about it, was that the statutes as constant as underlined under Bruin, there's constitutional because 18 to 20 year olds are not among the people protected by the second amendment. The statutes reasonable restrictions on 18 to 20 year olds possessing firearms is consistent that people would submit with the nation's historical tradition of firearm. Let me ask about that. So as we know under Bruin, it says we have to compare the time of the founding of the country with modern times. And we also know, and I, you know, you've cited cases and so did the other side where this has just been done on appeal without a record below. And I understand that. And I understand we can hear constitutional history at any time. Fine. Except that in Bruin, some courts have looked at evidence. And if we don't look at evidence in this case, then don't we have to make a decision as when is evidence should be taken or should it never be taken? There are going to be a time where both sides are going to say, well, wait a minute, judge, we need to bring in this because, you know, we're just citing somebody's history. Historians can go all over the place. In fact, with regard to the second amendment, what it means, the historians don't agree. And we could have a debate for hours on that. So you're asking a court to just make a judgment on whatever is put out on the appellate briefs. And I think that that goes to the point of the Frazier case where it was basically essentially a court saying, like, we really don't know how to handle this Bruin issue. So what they thought was, OK, we're going to stay this because we want to get some more clarification. And they even point out that cases, different levels of court are struggling with this all over the country. And in fact, I will be honest, I do have a hard time with the national or the treatise part of it because, you know, to your exact point, you know what, I can debate what the second amendment means against what Mrs. Hernandez does. And we could come up with a lot of different things. So I think what's unfortunate is that we're in a spot right now where we really can only go on what Bruin has given us. And there are confusing issues. I mean, as far as this case is concerned, yes, Mr. Hernandez is arguing, though, that traditionally and during our founding era, 18 year olds were in some cases required to possess firearms for the militia purposes. And she's saying that the state had an obligation here to demonstrate that the statute's restrictions of young adults' possession of firearm is consistent with that historical tradition that we're talking about. So she's saying that the state has not carried that burden either in argument, briefs or otherwise. And I would suggest first that militia part component of the second amendment is it was decoupled. Heller sort of decoupled, spread those apart so that, you know, the right to bear arms, we've kind of taken away the idea that the militia supports that right. Heller did that specifically. And also, they noted that militia ages varied, like some went down, you know, depending on what was needed at the time, the militia ages could go down to 18 or up to 21. And it's the people's position that historically, minors under the common law have come to be younger than 21. So what we're really talking about is, to go back to Justice Hyman's point as well, in terms of what is before this court, and what should you, your honors, how do we look at this? I think we can also look to the text of Bruin, and especially when Justice Alito highlighted that the federal law that bans the sale of handguns to anyone under the age of 21, it did not, Bruin didn't expand a category of people that could lawfully possess guns. And we're not saying that 18 to 20 year olds can never lawfully possess guns. We're just saying that within the context of Bruin, and that because we are a shall issue regime, licensing regime, defendants between, or excuse me, citizens between 18 to 20 certainly have the right to apply for an FOID card with that extra component. But she argues that there's a may there, because even if the parents consent, the government may still not allow it. That was, that's Ms. Herndon's argument. I didn't read it that way. I read it that the statute says, all that's needed, the 4-3-ISDS-65-4-A-2-4-I, I believe, all that is needed to do is those things that adults are required to do, and then also with the consent. And if I read the statute to say that if those, you know, those check marks or boxes are checked, then they shall be issued an application or a FOID card. So that's maybe a different reading, but I certainly do not think, and it's people's position that it still shall issue, because as long as you get these things done, then you get that FOID card. But she's also arguing, though, that even if the parent were to consent and the parent were, say, a convicted felon or the other list of categories in which the parent can't really consent, that you're basically restricting this 20-year-old's right to bear arms when it's not his fault or her fault. She's been or he's been a model citizen and maybe a college student, straight-A student, never in trouble before, but yet they can't bear arms because their parents have convictions. So do you want to respond to that? This is Ms. Hernandez's argument. Yes. And I think it's a good argument because I certainly see the component of that, where if it's not the fault of the applicant that they can't get through this final hurdle because they have a parent that, for some reason, is holding them back. I think that's a strong argument, but it doesn't work here because that's not what we have. We don't have the situation where this convicted felon and I just couldn't get there and I was caught with a gun and I am a straight-A student. We don't have that. I can see, though, where that happens. I'm glad you're going there, Ms. Bond. I'm actually glad you're going there. So now it comes back to my original question to Ms. Hernandez. So what is going on here? Do you believe we have a facial challenge or do we have an as-applied challenge? I believe this is a facial challenge because the argument, as I'm understanding it, is that 18- to 20-year-olds across the board have this additional hurdle. So that would be challenge the constitutionality on behalf of all 18- to 20-year-olds who face this, you know, the parent or guardian hurdle. And then I think it would become as-applied if, just back to your hypothetical, the college student with straight A's was denied. I think that would be an as-applied challenge because what else could that person do in that situation if they've done everything else right? So I do see how these two, you know, similarly situated defendants because of their age. So now it gives me back to Justice Taylor's question earlier. So then if we were to agree with Ms. Hernandez, and he asked this question to Ms. Hernandez, and I'm just simply asking it to you, then do we just find the entire statute unconstitutional then? If we would agree with Ms. Hernandez? I wouldn't find the entire statute unconstitutional because I do think that there's a long history in our nation of making sure that those who possess guns are law-abiding and responsible. And the reason why we have these restrictions on 18- to 20-year-olds is because we need to make sure that they are going to be law-abiding and they are going to be responsible. So I think we still need that statute. I would say it's still constitutional because we still have the ability, 18- to 20-year-olds certainly have the ability to bear arms. I'm going to ask the reverse of a question I asked Ms. Hernandez, and that is the state usually takes a position with regard to 18- to 20-year-olds opposite, well, their developing minds, okay? And so here you're taking the position, well, somebody under 21 shouldn't have this, should be restricted as they're still developing, isn't it? And so how do you reconcile that discrepancy? You know, it's interesting. I was workshopping with my colleagues this case and that issue came up, that it kind of feels ironic. You did a good job of workshopping. You did a good job of workshopping. I'm sure you did too, Ms. Hernandez. I'm not saying you didn't. Yeah, I am fortunate that my colleagues are very talented, very smart people. Yeah, that issue came up, that it was kind of, we kind of caught it. And when I wrote this brief, I didn't make that point because I think when I was writing it initially, the Bruin is so new that I wasn't really sure how to even tackle it. And then now that we're getting into the nuances of it and then having, you know, these arguments, this discussion, that was something that came up for us too, is the irony of us consistently in sort of the Miller progeny of cases where, you know, it's the youthful offender. And then here we're saying that the 18 to 20 year old youthful wants an FOID card, isn't old enough to get the card without parental consent. I can see how there's going to be some, maybe overlap a little bit. And I would recognize that that's just the context, right? It ultimately comes down to context. So let me ask you, you know, there haven't been too many cases decided on this question, but there apparently are some. Well, so which are your, you know, your top cases that you rely on? I think that if I, oh, around the country. Well, around the country, I think it's hard because I mean, you look at Frasier and Frasier just flat out decided not to decide the case and wait for somebody that's a higher court to go ahead and make that decision. And then they were going to revisit it. So I think around the country, everybody's kind of struggling with this. I think closer to home in our district, you know, now we have the three, Gunn, Brooks, and Baker, and those all tackle this very differently. And Gunn, you know, it's basically just saying we don't even need to get into, you know, to Justice Hyman's point, like the, you know, the evidence, like, do we need evidence? Do we not need evidence? Do we, you know, you can decide it without going full bore into the second amendment sort of, you know, brune test. So I think, too, there's a lot of different ways that we can, you know, I can get to this court to say, you know, what, what we did here is constitutional as apply or facially, and then also to as applied to this defendant when he was an 18 to 20 year old who doesn't have an FYD card. And I think the justifications for the adding 18 to 20 year olds, you know, with the extra step of securing a parental guarding consent, is that we're essentially the state is ensuring that those who possess and carry guns are mature enough to act responsibly to protect the public and other children. And indeed, there has been case law as Alvers, the city of Chicago, and it goes without saying that the government may restrict the rights of minors to protect their health and welfare. So I think that's kind of where we're at. Is there an analogy to be drawn to statutes that prohibit consumption of alcohol by those under 21 and prohibit gambling by those under 21? I think under this notion that, you know, states may enact statutes to ensure responsible possession of firearms. And they almost, it almost seems kind of divergent when you're talking about whether or not you can drink or gamble at 21, but you're a person is allowed to possess a gun between 18 and 20. And all of it is under the umbrella of protecting youthful persons. I think that that's an argument that certainly could be made, probably not by me, maybe by the other side, that that would be a stronger sort of correlation between the two. But here in this context, we're simply putting forth that what the statute requires for an FYD card for an 18 to 20 year old to possess a weapon isn't something that is unconstitutional, nor is it unconstitutional under Bruin. And then Bruin, in fact, says if it's a shell issued by some regime, like Illinois is, you're good to go. So you said that there's not much guidance, which obviously is correct, but the U.S. Supreme Court has teed up to here, I think the next week or two, a case called Rahimi, which involves a person who has a history of domestic violence and whether the state can restrict his right to carry firearms. Should we wait for the court's decision in that case? That seems like it may really perhaps help define the contours of the new Second Amendment jurisprudence that we find ourselves in. I think that's, I mean, essentially you have the ability to do, I mean, Frazier is even, I hate to keep harping on that case, but I just think it's so interesting to do this, but I just think it's so interesting. What they've said is that they've recognized that it's kind of over their head, kind of over their head at this point. And I'm getting feedback. So I think what's interesting about that is that it just gives the courts ability to take a step back and say, hey, we really don't or we want more contacts or contours, or it could be, maybe there was a conflict, you know, maybe twist to it, and then it makes your job harder. Like a landscape to wait and see what SCOTUS is going to do. Any other questions, Ms. Bynum? If no, you could finalize. Okay, thank you. At the end of the day, the people would submit that age-based restrictions on firearm ownership and possession are within the types of longstanding and presumptively lawful regulations that fall outside the scope of the Second Amendment. And viewed through the lens of history, the Second Amendment was not originally read to include younger people because they lacked the full constitutional rights until they reached the age of majority. And with that, in our written work, I would stand on the argument that I've given you today and ask that you affirm the defendant's conviction. Thank you so much. Thank you. Ms. Hernandez? Thank you. I just want to make a few points. First, I want to address again this issue about whether it's facial or as applied, and how Ms. Bond has connected that to the fact that parental consent isn't really government action with respect to discretion, or it's not similar or exactly the same as what the May issue scheme was in Bruin. And I will say that no, parental consent is not government action. However, like the court said in Frazier, her, the Second Amendment right is an individual right. And it is something that someone has to be able to exercise on their own. The fact that a person needs a third party to exercise this right is unacceptable, and is unconstitutional. And it doesn't matter that it's not government action. What's important here is that Mr. Thompson couldn't exercise that right on his own. And if he tried, because say his parents wouldn't agree to it, or he had, or they had whatever, or they had, whatever, they, the state could then be the state under their own discretion. And this is why it's amazing. And how that affects the facial versus as applied, is that it doesn't matter that he tried to apply for this, for this license, or that his parents had a criminal conviction, or that they were upstanding citizens. It doesn't matter because just the fact that he needs a third party in constitutional. And that's why this is a facial challenge rather than an as applied challenge. Okay. Yes. No, she agreed that it's facial because, yes, yes. But I just wanted to make sure because I know Justice Walker, and then, let me, let me ask you a question. You know, the may and shall, the statute says every affidavit found qualified shall be entitled. Right. But if you're not, so if you're not qualified, right, so if you're not qualified for, for an under 21 person would be, you don't have your parents' consent. That would make you unqualified. At that point, you may appeal, you know, because of whatever restriction you have. It's even unclear to me whether you can appeal that particular qualification or not. But, I mean, I'm assuming that you can based on the way that the administrative code is written. We don't have that case before us with the parent. So, yes, yes, we don't. I have another question. The Constitution, you're saying we look at the Constitution and what you said, if you look at that under 20, they can have guns and so forth. The Constitution says you cannot become President of the United States unless you're 35. So, and there are requirements in the Constitution for age. And so, just because the Constitution doesn't say anything about age and with regard to guns, does that mean that it can be anything? Or does that allow it up to the states and the federal government to set limits regarding responsibility for various rights? For example, the Constitution, you know, you could say, you know, anybody can vote. You can be five years old and vote. It doesn't. You know, we now have, we had a, we have a, I think it was amended to say what the age is. I think states, you know, down to 18 and I think now, but so the question of age shifts in the Constitution. So, why do we center on, why don't we look at the complete Constitution in context with regard to age? Well, I would say the opposite, which is that the Constitution, the founders were able to set age limits when they decided that that was relevant. And they decided not to put age limits here because there were none. Well, we don't know that without the evidence. I mean, we don't know why, which is why there's no evidence here and why, you know, just citing articles and everything doesn't tell us anything. I mean, there's no, there's. And the truth is, Your Honor, that we may never know for sure what the answer to that question is. And this is why for this court, this is a very difficult task. But I will say that the First Amendment and the Fourth Amendment, which also do not have age limits, do apply to those under 18. And courts have consistently held that children have these rights. And part of it has been an analysis of, well, the founders actually put an age restriction here. They could have very easily put an age restriction there and decided not to do that. So I would ask that this court look at it that way, rather than the opposite way. I also want to point out about this question of the brain development and all of that. And I do want to point out that in Illinois, Miller factors are only required if you're under 18. And around the country, in some states, 18-year-olds can face the death penalty. So I really, I feel like we can't really equate. But that's not true in Illinois. No one can be sentenced to the death penalty, thankfully. But I just want to point out that it's not really an equivalent comparison when you're thinking about sentencing and brain development. It's really an equivalent thing in brain development. And the state says that the militia was decoupled from the people under Heller. But I would argue that it didn't decouple it to say that the people in the militia didn't have Second Amendment rights. What it did say is that the militia was a subgroup of those within the people, not to say that they didn't have Second Amendment rights. And also, it's important to note that a lot of the cases that have found that 18 to 20-year-olds don't have rights have had to say that they do not have Second Amendment rights. They have had to find that they do not fall within the people because under the second step of Bruin, there is no historical analog. There just simply isn't. So these cases really, really fall into this category where they're saying, well, actually, 18 to 20-year-olds did not have Second Amendment rights. And I'm asking that this court reject that argument. And under this court's decision in Brooks, decide that all of these people fall within the people under the Second Amendment. Ms. Hernandez, you mentioned, you drew an analogy to the First Amendment. And my understanding of the Supreme Court's jurisprudence under the First Amendment is that while students don't lose their right to freedom of speech at the schoolhouse doors or gates, that school administrators do have the ability to restrict students' speech that, for example, is harmful to other students, for example, promoting illegal drug use. So isn't that really what we're talking about here, where the statute requires parental consent for those under the age of 21? Isn't that the very same interest that we're talking about? Well, Your Honor, first, I made the comparison because of the use of the people and who may fall within that protection. And the second point is that there is no Bruin analysis in the First Amendment. There is a different analysis based on the type of scrutiny, depending on what type of restriction there is. As Ms. Bond said, I mean, Bruin has basically set this whole framework out of whack. But the reality is that we have to apply Bruin. And Bruin says Mr. Thompson's actions were presumptively protected. And there is no historical analog to this type of restriction on his ability to exercise his Second Amendment right. And are there any other questions? Would it be okay then for, would the next domino be that someone who is 17 years old, this doesn't apply then, let's say they're 18 and they're still in high school. Let's use that. So they're 18, they're in high school. And under your reasoning, they could have a gun and they go to school. So as a next step, the prohibition of bringing guns into schools is going to fall too under the same reasoning that you're making here? Well, Your Honor, first, under Heller, there can be place restrictions to the Second Amendment. And I believe that some of the cases did have some analogs where there were prohibitions for bringing guns to universities. I'm not 100% sure what period exactly those were, but there were some historical restrictions for those who could, whether they could bring a gun or not to the university. It didn't have anything to do with age, although obviously you could say that it could be related, but there were those restrictions. So I'm not sure when exactly those restrictions were, but if we're looking at the historical analog, well, one could find one there. Well, then you would agree with me that the restriction here that says that you can't bring somebody between 18 and 20 can't have a gun because of their parents have a felony. That's a place. They can't go home. They wouldn't be able to go home and live in a house with somebody who's a felon. And so that's part of the requirement here. So that's a place restriction. Well, the Second Amendment can't restrict the ability to have a gun in the home. I mean, that is the quintessential point of having a gun is self-defense of the home. But if somebody has a felony, if somebody has a felony, they can be prohibited from having a gun. And that's what the statute says. If the adult could do something that would prohibit the child from having a gun in the home, right? That is correct, Your Honor. Although that's not what we're talking about here. We're talking about... It's ancillary to what you are talking about. I mean, the question I'm asking is how far does this go, which is the question I've before. I mean... I mean, how far does this go? I don't know. It's a different type of analysis, and it's a new world in the legal sphere of gun possession. And I'm sure there can be lots of under 21 to possess a gun outside of the home. And under 21-year-olds are restricted 100% from getting a CCL license. Is that something that's going to get challenged? I would bet it is. So I don't know where this is going to end, Your Honor. But I think that we need to limit to what we have here, which is a law-abiding adult in possession of a gun, where there are restrictions to his ability to do so that are unconstitutional. But of course, if an opinion would be presidential, it could be cited to assist in those next dominoes that could come up. I mean, the case has implications beyond the four corners of the apartment. Well, and so did gun and the other cases that were cited by the state, and it has implications the other way around. Obviously, I'm sure whatever way this court goes, perhaps the Illinois Supreme Court will take the case and make its own decision. You want to finish up? Yes. And so I want to thank everybody for their attention here. Again, this is a difficult issue. But given the framework that we've been given by the U.S. Supreme Court in Bruin, it is clear here that my client, Mr. Thompson, falls within the protections of the U.S. Supreme Court. The state has not satisfied its burden to show that there are any historical analogs where anyone under the age of 21, between the ages of 18 and 21, was restricted in a similar way from possessing a weapon. Therefore, this provision of the Floyd Card Act is unconstitutional and my client's conviction unconstitutional as well. So I ask that this court reverse his You both did an excellent job orally and in writing. You've made a very interesting case, more interesting, difficult. There are a lot of issues. This is a new issue, and you both did such a wonderful job. I want to congratulate both of you, and I'm sure my colleagues would agree with that. So thank you very much. We'll take the case under advisement, and thank you very much. Thank you.